Sabita Soneji (SBN: 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Ben Barnow (*pro hac vice forthcoming*)
b.barnow@barnowlaw.com
Anthony L. Parkhill (*pro hac vice forthcoming*)
aparkhill@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: (312) 621-2000

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RAMON JACKSON, CLYANNA PALMER, and SAMANTHA SHAW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROSPER MARKETPLACE, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Ramon Jackson, Clyanna Palmer, and Samantha Shaw ("Plaintiffs"), individually and on behalf of all others similarly situated (collectively, "Class members"), by and through their attorneys, bring this Class Action Complaint against Defendant Prosper Marketplace, Inc. ("Prosper" or "Defendant"), and complain and allege upon personal knowledge as to themselves and information and belief as to all other matters.

## I. INTRODUCTION

1. Plaintiffs bring this class action against Prosper for its failure to secure and safeguard the personally identifying information ("PII") of its current and former customers and applicants (including Plaintiffs), including names, Social Security numbers/National ID numbers, dates of birth, bank account numbers, Prosper account numbers, other financial/credit application information, driver's license numbers, marriage or birth certificates, passport numbers, tax information, and payment card numbers.

2. Prosper is a financial technology company based in San Francisco, California.

3. Between approximately June 2025 and August 2025, an unauthorized person gained access to Prosper's network systems and accessed and downloaded files containing the PII of Prosper's customers and applicants, including Plaintiffs and Class members (the "Data Breach").

4. Defendant owed a duty to Plaintiffs and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Defendant breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Plaintiffs' and Class members' PII from unauthorized access and disclosure.

5. As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiffs' and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiffs bring this action on behalf of themselves and all persons whose PII was exposed as a result of the Data Breach.

6. Plaintiffs, on behalf of themselves and all other Class members, assert claims for negligence, negligence per se, breach of implied contract, and unjust enrichment, and seek declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## II. PARTIES

***Plaintiff Ramon Jackson***

7. Plaintiff Jackson is a citizen and resident of Florida.

8. Plaintiff Jackson created an account with Prosper. As a condition of creating an account, Prosper required Plaintiff Jackson to provide it with his PII.

9. Plaintiff Jackson believed that Prosper had implemented and maintained reasonable security and practices to protect his PII. With this belief in mind, Plaintiff Jackson provided his PII to Prosper in exchange for receiving services from Prosper.

10. At all relevant times, Prosper stored and maintained Plaintiff Jackson's PII on its network systems, including the systems impacted in the Data Breach.

11. Plaintiff Jackson received a notice email from Prosper on December 11, 2025, notifying him that his PII, including his name, Social Security number/National ID number, and date of birth, was in the files accessed and acquired in the Data Breach.

12. Had Plaintiff Jackson known that Prosper does not adequately protect the PII it collects and maintains, he would not have agreed to provide his PII to Prosper.

13. As a result of the compromise of his PII in the Data Breach, Plaintiff Jackson has become a target for cybercriminals. Around the time the Data Breach occurred, Plaintiff Jackson began seeing hard inquiries on his credit report, which he was not responsible for which have lowered his credit score.

14. Since the Data Breach, Plaintiff Jackson has also experienced a large increase in the number of spam calls, texts, and emails he receives, including messages about loan applications and loans which he is unaware of.

15. Plaintiff Jackson has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including time and effort spent researching for more information about the Data Breach, dealing with phishing and scam attempts, and reviewing his credit score and accounts for potential fraud.

16. As a direct result of the Data Breach, Plaintiff Jackson has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of his PII.

***Plaintiff Clyanna Palmer***

17. Plaintiff Palmer is a citizen and resident of Texas.

18. Plaintiff Palmer applied for a loan from Prosper. As a condition of applying for a loan, Prosper required Plaintiff Palmer to provide it with her PII.

19. Plaintiff Palmer believed that Prosper had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Palmer provided her PII to Prosper in exchange for receiving services from Prosper.

20. At all relevant times, Prosper stored and maintained Plaintiff Palmer's PII on its network systems, including the systems impacted in the Data Breach.

21. Plaintiff Palmer received a notice email from Prosper notifying her that her PII was in the files accessed and acquired in the Data Breach.

22. Had Plaintiff Palmer known that Prosper does not adequately protect the PII it collects and maintains, she would not have agreed to provide her PII to Prosper.

23. As a result of the compromise of her PII in the Data Breach, Plaintiff Palmer has become a target for cybercriminals. Shortly after the Data Breach, Plaintiff Palmer experienced several hard inquiries on her credit which she was not responsible for and which lowered her credit score.

24. Since the Data Breach, Plaintiff Palmer has also experienced a large increase in the number of spam calls, texts, and emails she receives, including messages about loan applications and loans which she is unaware of.

25. Plaintiff Palmer has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including time and effort spent dealing with phishing and scam attempts, reviewing her credit score and accounts for potential fraud, and changing passwords to her account.

26. As a direct result of the Data Breach, Plaintiff Palmer has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of her PII.

***Plaintiff Samantha Shaw***

27. Plaintiff Shaw is a citizen and resident of North Carolina.

28. Plaintiff Shaw applied for a loan from Prosper. As a condition of applying for a loan, Prosper required Plaintiff Shaw to provide it with her PII.

29. Plaintiff Shaw believed that Prosper had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Shaw provided her PII to Prosper in exchange for receiving services from Prosper.

30. At all relevant times, Prosper stored and maintained Plaintiff Shaw's PII on its network systems, including the systems impacted in the Data Breach.

31. Plaintiff Shaw received a notice email from Prosper on December 10, 2025, notifying her that her PII, including her name, Social Security number/National ID number, and date of birth was in the files accessed and acquired in the Data Breach.

32. Had Plaintiff Shaw known that Prosper does not adequately protect the PII it collects and maintains, she would not have agreed to provide her PII to Prosper.

33. As a result of the compromise of her PII in the Data Breach, Plaintiff Shaw has become a target for cybercriminals. Since the Data Breach, Plaintiff Shaw has experienced a large increase in the number of spam calls she receives, including messages about loan applications and loans which she is unaware of.

34. Plaintiff Shaw has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including time and effort spent researching the Data Breach, dealing with phishing and scam attempts, and reviewing accounts for potential fraud.

35. As a direct result of the Data Breach, Plaintiff Shaw has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of her PII.

***Prosper Marketplace, Inc.***

36. Defendant Prosper Marketplace, Inc. is a Delaware corporation with its principal place of business located at 221 Main Street, Suite 300, San Francisco, CA 94105. It may be served through its registered agent: CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

## III. JURISDICTION AND VENUE

37. The Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

38. This Court has general personal jurisdiction over Defendant because it maintains its principal place of business in this State and regularly transacts business within this State.

39. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

***Overview of Prosper***

40. Prosper is a large financial technology company that was formed in 2005 and claims to have facilitated over $28 billion in personal loans.

41. In the regular course of its business, Prosper collects and maintains the PII of its customers and applicants, including Plaintiffs and Class members. Prosper requires customers and applicants to provide it with their PII, including the PII stolen in the Data Breach, before it provides them its services.

42. Plaintiffs and Class members are current or former customers or applicants of Prosper who entrusted Prosper with their PII in exchange for obtaining services or potential services.

***The Data Breach***

43. On or about September 1, 2025, Prosper discovered "unauthorized activity" on its network systems.[1] After an investigation, Prosper determined that between approximately June 2025 and August 2025, an unauthorized party gained access to Prosper's network systems and accessed and acquired the PII of Plaintiffs and Class members, including their names, Social Security numbers/National ID numbers, dates of birth, bank account numbers, Prosper account numbers, other financial/credit

[1] *Prosper Notice of Data Breach*, YAHOO!FINANCE (Dec. 9, 2025), https://finance.yahoo.com/news/prosper-notice-data-breach-150000321.html.

application information, driver's license numbers, marriage or birth certificates, passport numbers, tax information, and payment card numbers.[2]

44. Despite discovering that its customers' and applicants' PII was accessed and stolen on or about September 1, 2025, Prosper waited until approximately December 9, 2025—over three months after discovering the Data Breach—to begin notifying Plaintiffs and Class members that the Data Breach occurred and that their PII was accessed and acquired by unauthorized persons.

45. Prosper's failure to promptly notify Plaintiffs and Class members that their PII was disclosed, accessed, and stolen virtually ensured that the unauthorized third parties who exploited its security lapses could monetize, misuse, or disseminate that PII before Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

***Defendant Knew that Criminals Target PII***

46. At all relevant times, Defendant knew, or should have known, that the PII it collects and stores was a target for malicious actors. Despite such knowledge, Prosper failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiffs' and Class members' PII from unauthorized disclosures and cyberattacks that they should have anticipated and guarded against.

47. It is well known among companies that store sensitive personally identifiable information that such information—such as the PII stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[3]

---

[2] *Id.*

[3] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 AM), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

48. PII is a valuable property right.[4] The value of PII as a commodity is measurable.[5] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[6] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[7] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

49. As a result of the real and significant value of these data, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated with other such data and become more valuable to thieves and more damaging to victims. One such example is the development of "Fullz" packages, where cybercriminals connect data from a data breach with information from other sources to create a complete dossier on an individual, which can then be sold multiple times and used to commit a variety of fraud.[8]

50. Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed,

---

[4] *See* Marc van Lieshout, *The Value of Personal Data*, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[5] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[6] Organization for Economic Co-operation and Development, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[7] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[8] *See* Julia Kagan, *Fullz: Definition, Examples, Minimizing Risk*, INVESTOPEDIA (Aug. 31, 2022), https://www.investopedia.com/fullz-definition-4684000.

studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[9]

51. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Theft of PII Has Grave and Lasting Consequences for Victims***

52. Theft of PII can have serious consequences for the victim. The FTC warns consumers that identity thieves use PII to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[10] [11]

53. Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[12]

54. Identity theft is not an easy problem to solve. In a 2025 survey, the Identity Theft Resource Center found that 20% of victims of identity misuse needed more than 30 days to resolve issues stemming from identity theft and 13% required three months or more.[13]

---

[9] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[10] *See* Federal Trade Commission, *What to Know About Identity Theft*, FTC CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Dec. 12, 2025).

[11] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[12] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[13] Identity Theft Resource Center, *2025 Consumer Impact Report*, IDENTITY THEFT RES. CTR. (2025), https://www.idtheftcenter.org/publication/itrc-2025-consumer-impact-report/ (last accessed Dec. 12, 2025).

55. There may also be time lags between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[14]

56. It is within this context that Plaintiffs and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by someone intending to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

***Damages Sustained by Plaintiffs and Class Members***

57. Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the disclosure, compromise, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## V. CLASS ALLEGATIONS

58. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

59. Plaintiffs bring this action on behalf of themselves and all members of the following Class of similarly situated persons:

> All persons whose personally identifiable information was accessed in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

---

[14] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

60. Excluded from the Class are Prosper Marketplace, Inc., and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge.

61. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

62. The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. While Prosper has not released the total number of individuals affected in the Data Breach, it reported to the Texas Attorney General that approximately 1,161,581 people in Texas were affected and to the Washington Attorney General that approximately 249,848 Washington residents were affected.[15]

63. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiffs' and Class members' PII from unauthorized access and disclosure;

b. Whether Defendant had a duty not to disclose the PII of Plaintiffs and Class members to unauthorized third parties;

c. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiffs' and Class members' PII;

d. Whether Defendant breached those duties to protect Plaintiffs' and Class members' PII; and

e. Whether Plaintiffs and Class members are entitled to damages and the measure of such damages and relief.

---

[15] *Data Security Breach Reports*, TEXAS ATT'Y GEN. (Dec. 12, 2025), https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage; *Data Breach Notifications Directory*, WASHINGTON STATE OFFICE OF THE ATTORNEY GENERAL (Dec. 12, 2025), https://www.atg.wa.gov/data-breach-notifications.

64. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

65. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs, like all proposed members of the Class, had their PII compromised in the Data Breach. Plaintiffs and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiffs' claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

66. Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs are adequate representatives of the Class in that they have no interests adverse to, or that conflict with, the Class they seek to represent. Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

67. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CAUSES OF ACTION

### COUNT I

### NEGLIGENCE

68. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

69. Prosper owed a duty to Plaintiffs and Class members to exercise reasonable care in safeguarding and protecting the PII it collected and stored.

70. Prosper knew or should have known the risks of collecting and storing Plaintiffs' and all other Class members' PII, and the importance of maintaining secure systems. Prosper knew or should have known of the many data breaches that targeted companies that collect and store PII in recent years.

71. Given the nature of Prosper's business, the sensitivity and value of the PII it collects and maintains, and the resources at its disposal, Prosper should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

72. Prosper breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiffs' and Class members' PII.

73. It was reasonably foreseeable to Prosper that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class members' PII to unauthorized individuals.

74. But for Prosper's negligent conduct or breach of the above-described duties owed to Plaintiffs and Class members, the Data Breach would not have occurred and their PII would not have been compromised.

75. As a result of Prosper's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Prosper's possession; (vi) future costs in terms of time, effort,

and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

**COUNT II**

**NEGLIGENCE PER SE**

76. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

77. Prosper's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by businesses such as Prosper of failing to employ reasonable measures to protect and secure PII.

78. Prosper violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiffs' and other Class members' PII, by failing to provide timely notice, and by not complying with applicable industry standards. Prosper's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiffs and the other Class members.

79. Prosper's violations of Section 5 of the FTCA constitute negligence per se.

80. Plaintiffs and Class members are within the class of persons that Section 5 of the FTCA is intended to protect.

81. The harm occurring as a result of the Data Breach is the type of harm that Section 5 of the FTCA is intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices, caused the same type of harm that has been suffered by Plaintiffs and Class members as a result of the Data Breach.

82. It was reasonably foreseeable to Prosper that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls,

policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiffs' and Class members' PII to unauthorized individuals.

83. The injury and harm that Plaintiffs and the other Class members suffered was the direct and proximate result of Prosper's violations of Section 5 of the FTCA. Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Prosper's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT III

## BREACH OF IMPLIED CONTRACT

84. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

85. In connection with receiving services or potential services, Plaintiffs and all other Class members entered into implied contracts with Prosper.

86. Pursuant to these implied contracts, Plaintiffs and Class members provided Prosper with their PII. In exchange, Prosper agreed to, among other things, and Plaintiffs understood that Prosper would: (1) provide services or potential services to Plaintiffs and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' PII; and (3) protect Plaintiffs' and Class members' PII in compliance with federal and state laws and regulations and industry standards. Prosper benefitted from receiving Plaintiffs' and Class members' PII, as their PII was necessary for Prosper to operate its business.

87. The protection of PII was a material term of the implied contracts between Plaintiffs and Class members, on the one hand, and Prosper, on the other hand. Had Plaintiffs and Class members

known that Prosper would not adequately protect their PII, they would not have provided their PII to Prosper or obtained services from Prosper.

88. Plaintiffs and Class members performed their obligations under the implied contract when they provided Prosper with their PII.

89. Prosper breached its obligations under its implied contracts with Plaintiffs and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII, and in failing to implement and maintain security protocols and procedures to protect Plaintiffs' and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

90. Prosper's breach of its obligations of its implied contracts with Plaintiffs and Class members directly resulted in the Data Breach and the injuries that Plaintiffs and all other Class members have suffered from the Data Breach.

91. Plaintiffs and all other Class members were damaged by Prosper's breach of implied contracts because: (i) they provided their PII to Prosper in exchange for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**

**UNJUST ENRICHMENT**

92. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

93. This claim is pleaded in the alternative to the breach of implied contract claim.

94. Plaintiffs and Class members conferred a benefit upon Prosper in the form of PII provided to Prosper for services or potential services. Plaintiffs and Class members did so with an implicit understanding that Prosper would protect this PII.

95. Prosper accepted or had knowledge of the benefits conferred upon it by Plaintiffs and Class members. Prosper benefitted from Plaintiffs' and Class member's PII because it used it to facilitate services.

96. As a result of Prosper's conduct, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in value between their payments or labor made with reasonable data privacy and security practices and procedures that Plaintiffs and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

97. Prosper should not be permitted to retain the money belonging to Plaintiffs and Class members because Prosper failed to adequately implement the data privacy and security procedures for itself that Plaintiffs and Class members expected and that were otherwise mandated by federal, state, and local laws and industry standards.

98. Plaintiffs and Class members have no adequate remedy at law.

99. Prosper should be compelled to provide for the benefit of Plaintiffs and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

## VII. PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all other members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiffs as Class Representative, and appointing Plaintiffs' counsel as Class Counsel;

B. Awarding Plaintiffs and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiffs and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiffs, on behalf of themselves and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiffs and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiffs and the Class such other favorable relief as allowable under law.

## VIII. JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: December 16, 2025

Respectfully submitted,

/s/ Sabita J. Soneji
Sabita J. Soneji (SBN: 224262)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
ssoneji@tzlegal.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**Pro hac vice* forthcoming